UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAR LANELL EVANS,

                Petitioner,                        Case Number 20-11379

v.                                            Honorable David M. Lawson

SHANE JACKSON,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Jamar Lanell Evans shot and killed Curtis Lee Thomas during an altercation in Flint, Michigan on February 3, 2015.  He eventually pleaded no contest to second-degree murder and firearms offenses and was sentenced to prison.  The case had been pending for 27 months at the time.  Although the sentence followed the terms of the plea agreement, Evans sought unsuccessfully to withdraw his no-contest plea.  After failing to obtain relief in the Michigan appellate courts, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 alleging that he received inadequate representation, his speedy trial right was violated, and he should have been allowed to withdraw his no-contest plea.  In his response, the warden asserts no procedural defenses, but he argues that the petition lacks merit.  The Court agrees and will deny the petition.

I.

Evans originally was charged with open murder under Michigan law, which would have exposed him to a conviction of either first- or second-degree murder, depending on the proofs.  *See Taylor v. Withrow*, 288 F.3d 846, 849 (6th Cir. 2002); *People v. McKinney*, 65 Mich. App. 131, 135, 237 N.W.2d 215, 218 (1975)).  He entered into a plea agreement in which he pleaded no-contest to a reduced charge of second-degree murder and no-contest to the firearms charges, that

is, carrying a concealed weapon, possession of a firearm during the commission of a felony (felony firearm) third offense, and being a fourth felony habitual offender.  The agreement also called for a minimum sentence (under Michigan's indeterminate sentencing law) of no more than five years on the second-degree murder charge plus a mandatory consecutive ten-year sentence on the felony-firearm third-offense conviction.

Under thorough questioning by the trial judge, Evans acknowledged that there were no other terms to the plea agreement than those stated on the record.  He said that there were no off-the-record deals, and no one had forced or threatened him to plead no-contest.  The trial judge warned him that if the no-contest plea were accepted, Evans could not "come back later and say I was completely forced into this and that's why I pled no contest," or that "off the record they told me I was getting probation."  Plea Hr'g at 7 (Oct. 4, 2017), ECF No. 11-9, PageID.226.  Evans also acknowledged that he had reviewed and signed the advice of rights form and understood the trial rights that he would be waiving by pleading no-contest.  He asserted that his plea was being made freely and voluntarily. *Id.* at PageID.226-28.

One remarkable aspect of the proceedings was the acknowledged influence of the murder victim's mother, who had requested the lenient plea bargain.  The prosecutor stated that but for the mother's sense of forgiveness, the prosecutor himself would not have made such an offer.  The victim's mother indicated on the record that she was in agreement with the plea.  *Id.* at PageID.228-30.

At sentencing, Evans moved to withdraw his no-contest plea, contending that he was forced or pressured into pleading no-contest.  Evans argued that no one had contacted his alibi witnesses and his right to a speedy trial had been violated.  Sentence Hr'g at 9-10, ECF No. 1-10, PageID.244-44-45.  The trial judge then engaged Evans in a lengthy colloquy about the grounds

- 2 -

Evans asserted for his request.  In response to the judge's question, Evans admitted knowing that if he were convicted of first-degree murder at a trial, he faced a mandatory non-parolable life sentence. *Id.* at PageID.245-46.  After further questioning, the trial judge rejected Evans's argument that his plea was the result of pressure.  Reviewing the record of the proceedings, the trial judge recounted that Evans initially rejected a plea offer that was less favorable months earlier. The day before trial, he rejected an improved plea offer, but on the day jury selection was to begin, he changed his mind and wanted to accept it.  The judge observed that Evans had signed the plea form and denied that anyone had forced him to plead no contest, and that Evans "seem[ed] to be very astute and aware of what was going on." *Id.* at PageID.248-49.

Evans asserted that he signed the paperwork without understanding what he was doing, but the judge noted that he had asked Evans a number of questions at the plea hearing to ensure that he understood the terms of the plea agreement.  The judge found that there was nothing to suggest that Evans did not understand the proceedings.  The judge rejected the idea that Evans had been compelled to plead no-contest. *Id.* at PageID.250-51.  The judge concluded that it would not be in the interests of justice to allow Evans to withdraw his plea. *Id.* at PageID.252-53.

In response to a question by Evans, the judge explained that Evans had a right to withdraw his plea if the judge would not honor the sentencing agreement.  But the judge indicated that he intended to follow the agreement. *Id.* at PageID.253-55.  True to his word, the judge imposed the exact sentence called for by the plea agreement. *Id.* at PageID.257.

Evans filed an application for leave to appeal his convictions, sentence, and denial of his oral motion to withdraw his no-contest plea.  The Michigan Court of Appeals denied leave to appeal, *People v. Evans,* No. 343666 (Mich. Ct. App. June 21, 2018), as did the Michigan Supreme

Court, 503 Mich. 916, 920 N.W.2d 127 (2018) (table); *reconsideration den.* 503 Mich. 1023, 925 N.W.2d 835 (2019) (table).

Evans then filed his petition for a writ of habeas corpus. He asserts the following grounds:

I. Petitioner's due process rights were violated under the Sixth and Fourteenth Amendments when petitioner was denied his constitutional right to withdraw his plea and ineffective assistance of counsel.

II. Petitioner's due process rights were violated when petitioner was denied his constitutional right to a speedy trial.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*

*v. Richter*, 562 U.S. 86, 103 (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

Even though the state appellate courts did not give full consideration to Evans's federal claims on appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here.  Evans must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)).  That standard applies "even when a state court does not explain the reasoning behind its denial of relief."  *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under [*Harrington*], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption.  *See Johnson v. Williams*, 568 U.S. 289, 301-02 (2013).

All of Evans's claims were adjudicated by the state courts.  They were rejected by the state trial court in an oral decision rendered on the day of sentencing.  Then they were rejected on direct appeal in perfunctory orders by the state appellate courts denying leave to appeal, but that was enough to constitute a decision on the merits under section 2254(d).  *Werth v. Bell*, 692 F.3d 486,

492-94 (6th Cir. 2012).  This Court looks through the appellate courts' orders to the trial court's reasoned decision, which, again, is entitled to deference under the ADEPA.  *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2020).

A.

Evans argues he should have been permitted to withdraw his no-contest plea because he was denied the right to the effective assistance of counsel and to a speedy trial.  The Court disagrees.

The Supreme Court has said that, if a guilty plea is not voluntary and knowing, it violates due process and is void.  *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  But there is no absolute right to withdraw a guilty or no-contest plea.  *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012); *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).  Unless the plea violated a clearly-established constitutional right, the decision whether to allow a defendant to withdraw a plea is discretionary with the state trial court.  *Shanks*, 387 F. Supp. 2d at 748.

Of course, "[a] plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"  *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  But a guilty or no-contest plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving.  *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).  A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences."  *Brady*, 397 U.S. at 748.

The record in this case easily establishes that Evans knowingly and voluntarily pleaded no contest to the charges.  He was advised of the maximum penalties of the crimes to which he was

pleading guilty, and he acknowledged that by pleading no contest, he was giving up his trial rights, which were explained to him in the written waiver that he signed.  The terms of the plea agreement were placed on the record.  Evans acknowledged several times that he was pleading no contest freely and voluntarily and that no threats or coercion had been made to get him to plead guilty.

It is only when the consensual character of a guilty or no-contest plea is called into question that the validity of a plea may be impaired.  *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984).  A plea of guilty or no contest entered by one fully aware of the direct consequences, including the import of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes).  *Ibid.*

Evans's contention that he was coerced into pleading no contest is directly contradicted by the record at the plea hearing where he stated that no threats or coercion had been made to persuade him to plead no contest and that he was entering his plea freely and voluntarily.  His assertion at sentencing that he was coerced into pleading no-contest is insufficient to overcome the presumption of verity that attaches to his statements during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea.  *See Shanks*, 387 F. Supp. 2d at 750-51. Evans has presented no evidence, either to the state courts, or to this Court, to substantiate his claim that his plea was made as the result of threats or duress from his defense counsel or anyone else, which would justify vacating his plea.  *See Spencer,* 836 F.2d at 240-41.

The trial judge's denial of Evans's motion to withdraw his guilty plea did not contravene or unreasonably apply federal law.

B.

Evans also argues that his trial counsel was ineffective by advising him to plead no contest.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  When counsel is ineffective, that right is abridged. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  An attorney's performance triggers the first element when "counsel's representation [falls] below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Ibid.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

One way of establishing defective performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless argument does not constitute defective performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (reiterating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

Evans has not identified a viable defense he had to the charges. Although he contends that he has alibi witnesses, he did not provide the names of those witnesses or their proposed testimony to either the state or federal courts, nor has he provided the state courts or this Court with affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Evans did not offer, either to the Michigan courts or to this Court, any evidence beyond his own assertions about what these alleged alibi witnesses would have been able to say or and what their testimony would have been. In the absence of such proof, Evans cannot establish that his trial counsel performed deficiently.

Nor can Evans satisfy the prejudice component for this claim. To do so in the guilty or no-contest plea context, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded no contest and would have insisted on going to trial. *Premo v. Moore*, 562 U.S. 115, 129 (2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). That assessment in hindsight "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. The test "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). The plea agreement in this case was extremely generous. And for the reasons discussed above, there is little chance that an alibi defense would have taken root in this case. Evans has not shown here that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading no contest. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005).

To the contrary, Evans received an advantageous plea bargain: the prosecutor agreed to reduce the original first-degree murder charge to second-degree murder. Under Michigan law, the penalty for first-degree murder is life in prison without the possibility of parole. For second-degree murder, the sentence is up to life or any term of years in prison, but even a defendant sentenced to life in prison is eligible for parole. *See Perkins v. LeCureux*, 58 F.3d 214, 216 (6th Cir. 1995). Evans pleaded no contest to a reduced charge of second-degree murder with an agreement that the minimum would be no more than five years on that count. He was sentenced to a consecutive ten-year term for the felony-firearm conviction. That was a mandatory sentence because he was a serial violator of that statute. *See People v. Stewart,* 441 Mich. 89, 90, 490 N.W.2d 327 (1992).

But the overall plea agreement was quite generous.  In addition to defeating Evans's prejudice argument, that favorable plea bargain weighs against a finding that counsel was ineffective by advising a no-contest plea.  *See Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012)).

Evans is not entitled to relief on this claim because he has shown neither deficient performance nor prejudice as a result of his attorney's advice to plead no contest.

C.

Evans also argues that he should have been permitted to withdraw his plea because he was denied his right to a speedy trial.

A no-contest plea waives all such non-jurisdictional defenses and challenges to the sufficiency of the evidence.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010); *see also United States v. Studabaker*, 578 F.3d 423, 429 (6th Cir. 2009).  It is well established that a valid no-contest plea in a criminal proceeding generally forecloses claims arising from the alleged deprivation of constitutional rights occurring before the entry of the plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. On that basis, therefore, the state court's refusal to allow Evans to withdraw his guilty plea did not contravene or misapply federal law.

The 27-month delay between arrest and trial might give one pause here.  The Sixth Amendment does guarantee a criminal defendant the right to a speedy trial.  U.S. Const. Amend. VI.  And courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial." *Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992).

Other factors to consider when determining whether a speedy trial violation has occurred include the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice

- 11 -

to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These factors are part of a "difficult and sensitive balancing process." *Id.* at 533.

When considering the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005) (citing *Doggett*, 505 U.S. at 651). Delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon,* 556 U.S. 81, 90 (2009); *see also United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007).

The docket entries for this case show that there were several requests for adjournments at the request of "counsel," which clearly refers to defense counsel. *See* ECF No. 11-1, PageID.106. Delays caused by defense counsel are also attributable to the defense for speedy trial purposes. *Brillon*, 556 U.S. at 90-91. The record reflects that many of the adjournments were at the request of both parties, ECF No. 11-3, PageID.176; ECF No. 11-6, PageID.198, or with defense counsel's concurrence. ECF No. 11-4, PageID.183-84; ECF No. 11-7, PageID.203, 205-07. During 2017, much of the delay appears to have been for "neutral reasons," such as docket congestion and an apparent unintentional negligent error which resulted in the case being "overlooked" by the trial court. ECF No. 11-8, PageID.212. *See Brillon,* 556 U.S. at 90 (stating that "neutral reasons" such as negligence or overcrowded dockets weigh against the state less heavily); *see also Barker,* 407 U.S. at 531; *Maples*, 427 F.3d at 1026.

There is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F.3d 314, 327-28 (6th Cir. 2008). There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally

delayed the trial to gain a tactical advantage over the petitioner, *ibid.; see also Brown*, 498 F.3d at 531.

Regarding *Barker*'s third factor, "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. On the other hand, a criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Ibid.* Evans never asserted his right to a speedy trial. That would undermine his speedy trial claim, but it may support an argument that counsel was ineffective by failing to assert a speedy trial claim. However, there is no evidence in the record about any interaction between Evans and his lawyer on that score. And it is conceivable that counsel was biding time to work out a favorable plea deal, which he did eventually.

Finally, Evans has not shown that his defense was prejudiced by this delay. *Burns*, 328 F. Supp. 2d at 722. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.*, 507 F.3d 949, 954 (6th Cir. 1975). Evans says that many of his alibi witnesses had moved, although he said at the sentencing hearing that he found three of them. But, as noted above, the record is silent on what they would have said. Moreover, Evans does not suggest why he could not have found all eight of his proposed alibi witnesses by the time of trial, nor does he offer any argument as to why he would have needed to call all eight witnesses in support of an alibi defense. Most importantly, he never alleged that the passage in time impaired his proposed alibi witnesses' ability to testify about the petitioner's whereabouts on the day of the crime. Speculation is insufficient to prove prejudice for a speedy trial claim. *See United States v. Washam*, 468 F. App'x

568, 574 (6th Cir. 2012) ("aside from speculating that certain unnamed alibi witnesses now have faded memories, Washam identifies no prejudice").

And Evans cannot establish that he was prejudiced from his pretrial incarceration because at the time that his murder case was pending, he was serving a sentence in state prison for other convictions. Evans would have been incarcerated even if the murder and firearms charges against him were been pending. *See Brown*, 498 F.3d at 532 ("First, no prejudice arose from Brown's pretrial incarceration because even if he had not been detained in this case, he would have been in state custody for [other pending cases]."). Evans has not shown that his right to a speedy trial was violated or that counsel was ineffective by advising him to plead no contest rather than to file a motion to dismiss on speedy trial grounds.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 31, 2022

- 14 -